not definite as to the third commissioner, the court is still to look at these essentials of a fair appraisal. Such local residence, sharing in the knowledge of the community among whom the appraiser is himself to be held responsible, has been found necessary for a right discharge of these duties. An absentee freeholder is not so qualified. Although this statute did not clearly state the requisite residence of one of the three commissioners, the Special Term, acting in keeping with the continuity of precedent, could not, in the first instance, have lawfully appointed as commissioner a nonresident, whose domicile and allegiance were in Florida, even if he owned a freehold in the county of the situs. In some degree such a nonresident would be beyond the power and jurisdiction of the appointing court. And if such a nonresident could not be appointed, the removal and taking up a residence in Florida amounted to a giving up of the appointment and, from the date of such removal, vacated the office. To hold otherwise would leave the qualifications of this commission too insecure to form a competent body to take away a man's land against his will, even if at present we hear no objection from the defending landowners. While the fairness, competency, and general fitness of this commissioner are conceded, we deem this qualification of residence to be jurisdictional.

The order must therefore be reversed, but without costs; and an order directed to be entered declaring the place and appointment of Mr. George N. Rigby vacated, and that the remaining commissioners take steps, under section 12 of the Water Supply Act, for the appointment by the Special Term of a commissioner to fill the vacancy so occasioned. All concur.

(165 App. Div. 715)

FARELLI v. CHARLES T. WILLS CO., Inc., et al.

(Supreme Court, Appellate Division, Second Department. January 22, 1915.)

1. NEGLIGENCE (§ 134*)—PERSONAL INJURIES—ACTIONS—EVIDENCE.
    In a personal injury action by a servant of a subcontractor, evidence *held* not to show negligence on the part of the principal contractor in furnishing defective ropes for use with a derrick.
    [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 267–270, 272, 273; Dec. Dig. § 134.*]

2. NEGLIGENCE (§ 121*)—RES IPSA LOQUITUR—APPLICABILITY OF DOCTRINE.
    Where a general contractor furnished the derrick, and while it was being used by one subcontractor a rope lashing broke, allowing an iron beam to fall on the servant of another contractor, the doctrine of res ipsa loquitur has no application.
    [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 217–220, 224–228, 271; Dec. Dig. § 121.*]

3. NEGLIGENCE (§ 121*)—RES IPSA LOQUITUR—NATURE OF DOCTRINE.
    Where a servant of one subcontractor was injured when iron being carried by a derrick fell owing to the breaking of a lashing furnished and used by another subcontractor, the principal contractor relieved himself of any burden imposed by the doctrine of res ipsa loquitur upon showing the cause of the accident.
    [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 217–220, 224–228, 271; Dec. Dig. § 121.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. NEGLIGENCE (§ 124*)—EVIDENCE—INJURIES TO SERVANT.

A principal contractor furnished a derrick for use by subcontractors, and, while the derrick was being so used, lashings broke and iron beams fell on plaintiff, the servant of another subcontractor. Plaintiff contended that the principal contractor was liable, under Labor Law (Consol. Laws, c. 31) § 18, for furnishing insufficient appliances and equipment. *Held*, that evidence of a custom of long standing that one furnishing a derrick should not furnish lashings was admissible.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 235–238; Dec. Dig. ·§ 124.*]

5. APPEAL AND ERROR (§ 1050*)—REVIEW—HARMLESS ERROR.

As the subcontractor used its own lashings, the admission of the evidence, if improper, was harmless, for the principal contractor would not be liable for defects in such lashings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

Appeal from Special Term, Westchester County.

Action by Giambattista Farelli against the Charles T. Wills Company, Incorporated, impleaded with others. From an order setting aside a verdict for defendant, the named defendant appeals. Order reversed, and verdict reinstated.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

E. Clyde Sherwood, of New York City, for appellant.

Winfield L. Morse, of New York City (Michael J. Tierney, of New Rochelle, on the brief), for respondent.

RICH, J. This appeal is from an order setting aside the verdict of a jury in favor of the defendant Charles T. Wills Company, Inc., and granting a new trial, in an action brought to recover for personal injuries, upon the ground that:

"The court erred in admitting evidence over plaintiff's objection of a custom in direct conflict with section 18 of the Labor Law, and erred in refusing to charge, as requested by plaintiff, that the doctrine of res ipsa loquitur applied to this case."

The appellant contracted to make certain repairs on a residence at Tarrytown, N. Y. The appellant sublet to Kellogg & Park the structural iron work, and to Farente & Bro. a portion of the mason work, doing the brick and terra cotta work itself. The plaintiff was employed by Farente & Bro. as a common laborer, and was injured while at work by the falling of some iron beams which were being hoisted to the upper part of the building by the foreman and other employés of Kellogg & Park. A derrick, owned by Mr. Rockefeller, the owner of the building, was used for the purpose; it having been loaned or leased to the appellant for use in the work. Whether it was actually leased for a money rental does not appear, but it does appear that all money received by the appellant from the subcontractors for its use was accounted for and turned over to Mr. Rockefeller. In the proposal of Kellogg & Park for the iron work, the following appears:

"It is understood that we are to have the privilege of using a steam derrick belonging to you for hoisting and lowering any of our material, and in our calculations we have allowed the sum of two dollars ($2.00) per hour for this service."

The changes necessary to fit the derrick for use by steam power were made in part by the appellant and in part by Kellogg & Park. The derrick was used under a similar arrangement by Farente & Bro. in connection with their work on the building. The appellant did not furnish any ropes or chains for use as lashings in raising or lowering material. It furnished nothing below the hook on the derrick. The appellant and each subcontractor when using the derrick furnished their own ropes and lashings. The loads of material differed to such an extent that no one appliance for fastening to the derrick could be used by all, so each furnished and used his own. The engine operating the derrick was in charge of an engineer employed by the appellant, who paid for his service, but was under the sole control of the contractor using the derrick; his duties being simply to start and stop the engine in obedience to signals given him by the foreman or other employé of the contractor who happened to be using the derrick. At the time of the accident, the foreman and employés of Kellogg & Park were hoisting iron beams from the ground to the upper part of the building. The method which had been followed by them in doing the work was to place several of the beams side by side, fasten them together with a rope, and hook the same into the hook at the end of the derrick cable. Because of the narrow space through which they were lifted, they were fastened so as to hang at an angle of about 45 degrees. This was accomplished by placing the lashing at one side of the center of the load. For the purpose of guiding it while being hoisted, a light rope, about three-fourths of an inch in diameter, was used by one of the men on the ground, who prevented its coming in contact with any part of the building in its ascent, until it reached the second story, when another employé stationed there guided it from that point on. At about 1 o'clock on the day of the accident, the employés of Kellogg & Park, under the direction of their foreman, commenced raising iron beams to the upper part of the building, using the derrick for that purpose, and had completed their work, with the exception of one load, at about 4 o'clock. The last load consisted of from 16 to 20 beams, tied together with ropes belonging to Kellogg & Park and furnished by them to their employés for that purpose. It was a smaller load and weighed less than any load that had preceded it that day. The light line was used ordinarily for the sole purpose of guiding the load, and did not sustain any of its weight; but in attaching this last load to the derrick the foreman used it to sustain the load in part. As the beams reached the second floor, they became caught under the stone sill of one of the windows, and in consequence of an increased strain on the light line it broke, allowing the load to swing to a perpendicular position and slip through the loops of the heavier rope, known as the lashing, and fall upon the plaintiff.

Upon the trial the court dismissed the complaint as to the defendant Farente & Bro., and the plaintiff discontinued as to the defendant Kellogg & Park.

[1] No part of the derrick broke or gave way; the beams fell solely because the small rope would not sustain the increased strain caused

by its coming in contact with the window sill. The evidence does not establish a cause of action against the appellant, and its exception to the refusal of the learned trial court to dismiss the complaint at the close of the evidence presents reversible error. The appellant was not responsible for the condition of the ropes. They were furnished by Kellogg & Park to their employés and used by them. The appellant did not furnish the ropes, and the uncontradicted evidence shows that it did not, by assenting to the proposition of Kellogg & Park for the use of the derrick, impliedly agree to furnish them, and there is no law requiring that it should. It is shown that a leased derrick consists only of the foot block, mast, boom spider, guy ropes and wire guys, anchor chains and two sets of blocks, and that the slings or lashings are no part of the equipment of a leased derrick unless specially contracted for. Beyond this, there is no proof that the rope used for lashing or for the tag line by the employés of Kellogg & Park were, either of them, insufficient or defective. All the testimony is to the contrary, and the load of beams which fell was safely hoisted the morning following the accident with the same ropes and lashings. The mere fact of the breaking of the tag line, when subjected to the unusual strain caused by the load catching on the window sill, is not sufficient of itself to establish its insufficiency or that it was defective. Dugan v. American Transfer Co., 160 App. Div. 11, 145 N. Y. Supp. 31; Duhme v. Hamburg-American Packet Co., 184 N. Y. 404, 77 N. E. 386, 112 Am. St. Rep. 615; Robinson v. Consolidated Gas Co., 194 N. Y. 37, 86 N. E. 805, 28 L. R. A. (N. S.) 586.

The theory of the trial court is shown by its charge to be that the jury might find from the evidence that the derrick was, when leased to Kellogg & Park by the appellant, defective by reason of not being equipped with proper slings, lashings, and guiding rope as part of its equipment. It said:

"Was this derrick, when it was hired by Kellogg & Park from the defendant, a defective derrick? Was it reasonably safe and properly equipped to do the work it was called upon to do? If you find it was, then, even though the plaintiff was injured, he cannot recover."

After the main charge, the court left it to the jury to determine as a question of fact whether the tag line which broke was owned by the appellant, and furnished by it as part of the derrick equipment, to be used as a lasher, and instructed them that if they found "that the sling or the tag line belonged to Kellogg & Park, and was not a part of the original derrick as furnished, their verdict should be for the defendant." There is no claim that the derrick was in any manner defective, except by reason of the failure of appellant to furnish lashing and guiding ropes. The testimony upon this question is not contradicted. The jury could not have found that the appellant did in fact furnish either of such ropes, or that the derrick was defective because no lashing or guiding ropes were furnished by the appellant as part of the derrick equipment, and, had they so found, their verdict would have been set aside as being contrary to the evidence.

[2-5] The conclusion of the learned trial court that it erred in refusing to charge that the falling called upon the defendant for an ex-

planation is erroneous. The doctrine of res ipsa loquitur has no application to the facts presented by the record before us, and, if it did, the appellant was only called upon to explain the cause of the accident, which it has done by showing that the accident was caused by the load catching in a window sill, in consequence of which the rope furnished by Kellogg & Park, and for which appellant was in no wise responsible, broke. The respondent admits and contends that the uncontradicted evidence shows that the appellant had wholly failed to furnish or provide slings, lashings, and tag lines, and that Kellogg & Park had furnished them. The failure to charge the jury that the doctrine of res ipsa loquitur applied to the case is the only ground stated by the trial court as the basis of its action in setting the verdict aside, but the order states the additional ground "that the admission over the plaintiff's objection of evidence proving a custom" was in direct conflict with section 18 of the Labor Law (Consol. Laws, c. 31). The custom referred to was that the appliances and equipment of a leased derrick consisted only of certain things and did not include lashings or tag lines. The respondent contended that because it was necessary, in order to raise iron beams with the derrick, that they should be fastened to it by means of one or more ropes or chains, it followed—although there was no evidence to that effect—that the appellant was bound, under its agreement to lease the derrick to Kellogg & Park for their use, to furnish the necessary ropes or chains with which to secure the beams to the derrick while being hoisted, and by failing so to do had furnished a defective and unsafe appliance for use of the lessees and their employés, for the resulting injury in the use of which it was liable. Proof consisting of a general, well-known, and followed custom existing for more than 20 years negativing this contention was competent and properly received. If not, the plaintiff was not prejudiced by the admission of the evidence, for whatever the agreement between the appellant and Kellogg & Park, if as matter of fact the latter furnished the ropes used in connection with the derrick, the appellant cannot be made responsible for the condition in which they were used by Kellogg & Park.

The verdict of the jury was sustained by the evidence, and the order appealed from is reversed, with costs, the verdict reinstated, and judgment directed to be entered thereon in favor of the defendant-appellant. All concur.